FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEC 1 0 2014

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.  **4:14CR391 RWS/NAB** |
| HUBOLIST M. ELLIOTT a/k/a Hugh Elliott a/k/a Hubie Elliott a/k/a H. Elliott, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**INDICTMENT**

**COUNT ONE**

The Grand Jury charges that:

1. At all times relevant, HUBOLIST M. ELLIOTT, also known as Hugh Elliott, Hubie Elliott, H. Elliott, ("ELLIOTT"), and his company Travel World Vacations, Inc. ("Travel World"), offered investment opportunities in fractional real estate. ELLIOTT, Travel World, and ELLIOTT-affiliated companies operated from various locations including, but not limited to, locations in North Carolina.

2. ELLIOTT and Travel World represented to clients and potential clients that a fractional real estate investment consisted of a share or shares in the actual ownership of a specific property.

3. ELLIOTT and Travel World offered fractional real estate investments in vacation properties in Florida.

4. Among the specific properties offered by ELLIOTT and Travel World as an investment opportunity were condominiums in Siesta Key Village located in the southern part of Sarasota, Florida.

5. The Siesta Key Village properties were known as "Calle Minorga" consisting of a series of resort-type condominiums.

6. Through fractional real estate investments, ELLIOTT and Travel World offered its clients the opportunity to buy and own a deeded interest in one or more Calle Minorga properties.

7. By various means, including direct mail and a web site, ELLIOTT and Travel World solicited individuals and entities to invest in fractional real estate through Travel World.

8. Many of these investors were unsophisticated individuals of retirement age interested in an investment for their retirement funds.

9. Many of these same investors were also approached by ELLIOTT about investing in real estate "tax liens" through Data Resource, an affiliated company.

*The Fractional Real Estate Transaction*

10. An individual who was interested in purchasing a fractional ownership share in a particular piece of real estate from ELLIOTT and Travel World would pay a specified sum to ELLIOTT, in his capacity as an officer or director of Travel World, or to Travel World or an affiliated company.

11. As part of the real estate transaction, both parties would typically execute a "Fractional Return - Note" hereinafter referred to as the "Note." The Note would reflect the amount paid by the investor and the amount of return promised to be paid by ELLIOTT and Travel World.

12. The Note also specified that the return on the investment would be paid within a specified amount of time.

13. The Note specified that "[t]his Note is given for money owed and represents a business debt associated with the purchase of real estate. This Note is secured by a deed of trust executed of even date herewith."

14. Along with the Note, ELLIOTT and Travel World presented the investor a "Deed of Trust" specific to the real estate being purchased. The Deed of Trust identified Travel World as the "Grantor," a named third party as the "Trustee," and the individual investor as the "Beneficiaries." The Deed of Trust further identified that the trust instrument was prepared by the named trustee. Typically, ELLIOTT executed the Deed of Trust on behalf of Travel World.

15. The Deed of Trust typically identified a "Parcel" number and provided a brief description of the specific property which typically included a specific address such as "5132 Calle Minorga."

16. The Deed of Trust stated that the Grantor has "sold, given and conveyed" the identified real property to the Trustee and further stated that: "Grantor covenants with Trustee and Beneficiaries that he is seized of Premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances ..."

*The Scheme*

17. Between on or about January 1, 2009 and on or about June 20, 2014, ELLIOTT, individually and by and through his company Travel World, made numerous materially false and fraudulent representations, promises, and material omissions of fact to his fractional real estate

3

investors and potential investors, including false representations regarding the ownership of the real property involved in the fractional real estate transaction and the use of investor funds.

18. As part of the scheme, typically neither ELLIOTT nor Travel World owned any interest, fractional or otherwise, in the properties being offered to investors as available for a fractional real estate purchase. Said investments, however, were presented and transacted by ELLIOTT knowing that neither he nor Travel World had an ownership interest in the properties or any legal right to engage in real estate transactions regarding the properties.

19. Specifically, neither ELLIOTT nor Travel World owned certain Calle Minorga properties offered to investors and identified in Deeds of Trust provided to investors as part of the transaction. In some instances, the real property represented as an opportunity for investment and ownership did not exist. For example, investors were offered an opportunity to purchase a fractional real estate share in such properties identified as "5133 Calle Minorga" or "Calle Minorga Unit 1" when no such properties existed. In other instances, the real property represented as an opportunity for investment and ownership did exist but neither ELLIOTT nor Travel World had a legal interest, fractional or otherwise, that could be conveyed to an investor or any right to enter into a transaction regarding that property. For example, many investors were offered a fractional real estate share in real properties identified as "5128 Calle Minorga" and "5132 Calle Minorga" which were both properties owned by an unrelated third-party.

20. As part of the scheme, ELLIOTT, individually and by and through Travel World, represented that a trustee was involved in the fractional real estate transaction and identified a specific individual as "Trustee" in the Deed of Trust. In addition, ELLIOTT, individually and by and through Travel World, represented that the same individual had prepared the Deed of Trust. ELLIOTT made these representations knowing that the identified individual: would not

4

be serving as "Trustee"; had no knowledge of the transaction; and had no role in preparing the Deed of Trust.

21. As part of the scheme, investor money was routinely commingled together and used to pay other investors, pay expenses of various ELLIOTT-affiliated businesses, and to pay ELLIOTT's personal expenses. Investors were paid interest mostly from funds obtained from other investors or from their own principal investment, rather than from returns attributable to their investment in fractional real estate. Some investors had their principal paid back, however, those funds also came from other investors and ELLIOTT successfully convinced many to re-invest in the fractional real estate scheme or reinvest in other investments offered by ELLIOTT-affiliated companies.

22. At no time did ELLIOTT advise investors that their invested funds would be spent in this manner, or that their returns and/or interest payments would be paid from other investors' principal.

23. On or before March 1, 2010, as part of the scheme to defraud, ELLIOTT solicited an individual investor, J.S., to invest in fractional real estate specific to the "Calle Minorga" properties. ELLIOTT represented to J.S. that his funds would be invested as part of a fractional real estate transaction that would result in an ownership interest in a specific property and that his investment would be secured by his ownership interest in that property.

24. Between on or about March 1, 2010 and August 24, 2012, and based upon these initial representations and subsequent similar representations, J.S. entered into a series of fractional real estate transactions with ELLIOTT and Travel World involving Calle Minorga properties beginning with an initial investment by J.S. of approximately $46,500.

25. As part of his fractional real estate transactions with J.S., and as part of the

5

scheme, deeds bearing the heading of "Calle Minorga Deed of Trust" were executed and delivered to J.S. The Calle Minorga Deeds of Trust executed and delivered to J.S. identified such properties as "Calle Minorga Unit 1," "5128 Calle Minorga Unit 1," "5132 Calle Minorga" and "5134 Calle Minorga." ELLIOTT executed and delivered said deeds knowing the properties identified did not exist or were owned by an unrelated third party and, thus, could not be transferred or conveyed as represented.

26. The Calle Minorga Deeds of Trust executed and delivered to J.S. by ELLIOTT also identified a specific individual as Trustee when ELLIOTT knew no such Trustee existed and no such individual was involved in the transaction as represented.

27. As part of the scheme, and as a result of the scheme, ten or more investors, including J.S., invested in ELLIOTT's fractional real estate scheme. The amount of loss to investors of ELLIOTT's fractional real estate scheme, and the related investments and reinvestments in ELLIOTT's affiliated companies as a result of the scheme, is more than $1,000,000.

*The Mailing*

28. On or about March 26, 2010 in the Eastern District of Missouri and elsewhere,

> **HUBOLIST M. ELLIOTT a/k/a**
> **Hugh Elliott a/k/a**
> **Hubie Elliott a/k/a**
> **H. Elliott,**

the defendant herein, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing this scheme to defraud and in attempting to do so, did cause to be mailed: check number 193, drawn on an account in the name of J.S., account number xxxx4037, with JP Morgan Chase Bank, payable to Travel World,

6

in the amount of $46,500, from Missouri to North Carolina, with such funds representing an investment by J.S. in fractional real estate as offered and represented by ELLIOTT and Travel World.

In violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Section 981(a) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1341 as set forth in Count One, the defendant shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to said offense.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offense.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
CHARLES S. BIRMINGHAM, #47134MO
Assistant United States Attorney

8